1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GERI LYNN GREEN – 127709
LAW OFFICES OF GERI LYNN GREEN,LC
155 Montgomery Street, Suite 901
San Francisco, California  94104-4166
Telephone:     (415) 982-2600
Facsimile:      (415) 358-4562
gerilynngreen@gmail.com
greenlaw700@gmail.com

Attorney for Plaintiff JOHN ROE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PLAINTIFF JOHN ROE[1],

        Plaintiff,

    v.

CITY AND COUNTY OF SAN FRANCISCO, San
Francisco Chiefs of Police HEATHER FONG and
GEORGE GASCON, SANDRA C. JACQUEZ
FLORES, CHRISTOPHER MERINDINO, BRIAN
GINN, MARIO MOLINA, JOSEPH L. FORD,
DANIEL H. BUTLER , ELIZABETH A.
WICKMAN, KENNETH KARCH, EMJOHN V.
PASCUA, MICHAEL J. KLINKE, JOHN S.
POSUSNEY, DAVID S. PARNELL, TSENG
CHOW, AMY POLING, GEORGE
DOBBERSTEIN, CHRISTINE LASCALZO,
KRISTINE CARTER, FRANCISCO MARTINEZ,
NICOLAS T. FORST, MARK HAMMELL, SANG
JUN, GREGORY A. JENKINS , CHRISTINE
LOSCALZO, BEN HORTON, SCOTT LAU, JOHN
CAGNEY AND TOM NOOLAN, AND
DEFENDANT DOES 1-40

        Defendants.

Case No._____

**PLAINTIFF'S COMPLAINT FOR
VIOLATION OF CIVIL RIGHTS
AND COMMON LAW CLAIMS**


**JURY TRIAL DEMANDED**

---

[1] The Plaintiff JOHN ROE is able and willing to provide his true name under protective seal.

## INTRODUCTION

1.  This claim arises from the unconstitutional arrest and detention of JOHN ROE, a paid, embedded Human Source for the federal law enforcement employees working in an individual and in official capacity for the Federal Bureau of Investigation, Homeland Security's Immigration Customs Enforcement, the ICE Street Terrorism Initiative, the ICE San Francisco Operation Community Shield, California Department of Justice's Criminal Intelligence Bureau, San Francisco Police Department, and the San Francisco Police Department Gang Task Force Unit.

2.  Mr. JOHN ROE worked as a paid embedded Human Source from September 2005 through February 2010 when he was de-activated.

3.  Mr. ROE regularly reported to his FBI handlers, debriefed SFPD, FBI and/or ICE agents on more than 72 occasions, providing valuable intelligence on the inner working of the gang and its members, identifying hundreds of gang members, wearing body wires to record meetings under extremely dangerous conditions on at least 14 different occasions, and making scores of consensually monitored calls to gang members in efforts to purchase weapons as well as to implicate gang members in the ongoing criminal activity. In furtherance of his handler's goals, Mr. ROE suffered beatings, arrests and threats of murder from the gang.

4.  Mr. ROE was arrested October 22, 2008 and remains incarcerated awaiting federal criminal trial on charges directly resulting from his authorized activities performed within his undercover work as a paid embedded Human Source.

5.  The defendants have engaged in a pattern of fabrication and deceit in a deliberate and ongoing violation of Plaintiff's constitutional rights.

6.  At the time of his recruitment, Mr. ROE was a 20 year old high school graduate working his way through college, with the goal of entering the military and eventually becoming a law enforcement officer.

7.  Mr. ROE remains detained in Marin and Alameda County jails.

8.  The individual agents through the scope of their employment with federal agencies violated Mr. ROE's civil and constitutional rights when they induced his services, placing him into a known

dangerous gang without providing appropriate protection for him and his family throughout the investigation.

9. The individual agents through the scope of their employment with federal agencies, Mr. ROE's civil and constitutional rights when they encouraged, funded and authorized specific illegal activity, then used the fruits of his investigations to unreasonably search, seize, investigate and implicate *him* for those authorized activities.

10. The individual agents, through the scope of their employment with federal agencies, violated Mr. ROE's civil and constitutional rights when they promised protection for him and his family, without providing it, in exchange for continued service from him.

11. The individual agents through the scope of their employment with federal agencies, violated Mr. ROE's civil and constitutional rights when they used their authority to improperly promise inducements in exchange for self-incriminating information, without advising him of his rights to counsel and against incrimination;

12. The individual agents, through the scope of their employment, violated Mr. ROE's civil and constitutional rights when they conspired with other federal agencies and agents to obstruct justice and abuse the court process.

13. As a result of the Defendants malfeasance, Mr. JOHN ROE has been unlawfully deprived of his constitutional rights, his liberty, his freedoms, his family, his livelihood and over two years of his young life.

## INTRADISTRICT ASSIGNMENT

14. Pursuant to Civil L.R. 3-5 assignment to this district is proper because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the county served by this division.

## JURISDICTION AND VENUE

15. This action is brought pursuant to 42 U.S.C. § 1983 for violations of federal law and the United States Constitution. The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

16. The claims alleged herein arose in this district, therefore venue in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

17. Plaintiff JOHN ROE is a United States Citizen and a resident of the State of California. He is currently incarcerated at Glenn E. Dyer Detention Facility, through the Alameda County Sheriff's Office, in Alameda, California awaiting federal criminal trial.

18. Plaintiff is informed, believes and based thereon alleges that the following individual FBI special agents, SANDRA C. JACQUEZ FLORES, JOSEPH L. FORD, DANIEL H. BUTLER , ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS AND CHRISTINE LOSCALZO, at all times herein, were officers and agents of the Federal Government, acting under color of federal law, and are sued individually and in their official capacity.

19. Plaintiff is informed, believes and based thereon alleges that the following individual FBI Supervisors, Super Special Agent DANIEL H. BUTLER and Special Agent in Charge JOSEPH L. FORD, at all times herein, were officers and agents of the Federal Government acting under color of law, and are sued individually and in their official capacity.

20. Plaintiff is informed, believes and based thereon alleges that individual ICE Special Agents BRIAN GINN, BEN HORTON, AND CHRISTOPHER MERINDINO, at all times herein were officers and agents of the Federal Government acting under color of law, and are sued individually and in their official capacity.

21. Plaintiff is informed, believes and based thereon alleges individual ICE Supervisors DEFENDANT DOES 1-10, presently unknown to the Plaintiff, at all times herein were officers and agents of the Federal Government, were acting under color of law, and are sued individually and in their official capacity.

22. Plaintiff is informed, believes and based thereon that the Defendant CITY and COUNTY OF SAN FRANCISCO ("CITY") is a municipal corporation duly organized and existing under the laws of the State of California. Under its authority, Defendant CITY operates the SFPD and the SFGTU.

23. Plaintiff is informed, believes and based thereon alleges that SFPD Officer SCOTT LAU, and Homicide Inspectors JOHN CAGNEY and TOM NOOLAN were acting within their scope of employment at all times herein, and are being sued individually and in their official capacity.

24. Plaintiff is informed, believes and based thereon alleges that SFPD Officer MARIO MOLINA (1586) was assigned to the San Francisco Police Department's Gang Task Force Unit ("SFGT"), and was working cooperatively and in conjunction with ICE's San Francisco Operation Community Shield ("OCS"). MOLINA acted within the scope of employment at all times herein, is being sued in his official and individual capacity. OCS was a coordinated investigation effort including individuals from the ICE Street Terrorism Unit ("STI"), SFPD, the SFGT, and the FBI. Individuals working on OCS were tasked with investigating San Francisco gang activity, including the gang known as Mara-Salvatrucha ("MS-13"). The MS-13 investigation was called Operation "Devils Horns".

25. Defendants HEATHER FONG and GEORGE GASCON, were at all times relevant hereto the Chief of the San Francisco Police Department, and further alleges that FONG was succeeded by GASCON as the San Francisco Chief of Police in August of 2009. Plaintiff ROE is informed and believes and thereon alleges that Defendant FONG and/or GASCON were at all relevant times, the responsible party and final decision maker for the hiring, retention, screening, supervision, training, instruction, discipline, control, equipping and conduct of Defendant police officers. They are also charged with promulgating all orders, policies, protocols, practices, customs, rules, instructions and regulations of the SFPD including but not limited to those orders, rules, instructions and regulations concerning the authority to use force. In committing the acts and omissions alleged herein, Defendant FONG and GASCON were acting under color of state law and within the course and scope of their employment as Chief of the San Francisco Police Department. Defendants FONG and GASCON are sued in their official and individual capacities.

26. As alleged above, Plaintiff is informed, believes and based thereon alleges individual ICE Supervisors DEFENDANT DOES 1-10, presently unknown to the Plaintiff, at all times herein were officers and agents of the Federal Government, were acting under color of law, and are sued individually and in their official capacity.

27. Plaintiff is informed, believes, and based thereon alleges that DEFENDANT DOES 11-15, who were SFPD, CITY and/or state employees, and are presently unknown to the Plaintiff, unlawfully interviewed Mr. ROE on September 30, 2005.

28. Plaintiff is informed, believes, and based thereon alleges that DEFENDANT DOES 16-20, who were federal employees, and are presently unknown to the Plaintiff, unlawfully interviewed Plaintiff JOHN ROE on September 30, 2005.

29. Plaintiff is informed, believes, and based thereon alleges that DEFENDANT DOES 21-25, who were SFPD employees, and are presently unknown to the Plaintiff, unlawfully arrested Plaintiff JOHN ROE on October 22, 2008.

30. Plaintiff is informed, believes, and based thereon alleges that DEFENDANT DOES 26-30, who were federal employees, and are presently unknown to the Plaintiff, unlawfully arrested Plaintiff JOHN ROE on October 22, 2008.

31. Plaintiff is informed, believes and based thereon alleges individual SFPD Supervisor DEFENDANT DOES 31-40, presently unknown to the Plaintiff, at all times herein, were all officers and agents of the City or State Government, were acting under color of law, and are sued individually and officially.

32. Plaintiffs therefore sue DEFENDANT DOES 1-40 by such fictitious names and will seek leave to amend this complaint to add their true names when the same have been ascertained.

## ALLEGATIONS

33. This claim arises from the activities of individual federal agents conspiring to and violating the constitutional rights of Mr. ROE.

34. From September 2005 through February 2010, Mr. ROE was working as an embedded paid Human Source, within the OCS' "Devils Horns" investigation.

//

## JOHN ROE's Work as an OCS Confidential Human Source

35. On September 30, 2005, ROE participated in a 2 hour debriefing with FBI Special Agent Sandra C. Jacquez-FLORES ("FLORES"), ICE Special Agent Chris MERENDINO ("MERENDINO") and SFGT Officer Mario MOLINA, and DEFENDANT DOES 11-20.

36. According to an FBI report documenting this meeting, Mr. ROE providing extensive information on MS-13, including members' names and addresses, identifying members who have guns, describing MS-13 activities, times and places of meetings, interaction with members from Los Angeles and El Salvador, past criminal activity and planned criminal activity, including murders, gun buys, etc.

37. Thereafter, Officer MOLINA recruited Plaintiff JOHN ROE as a confidential Human Source for OCS.

38. MOLINA groomed Mr. ROE, promising a law enforcement career and protection for him and his family. Mr. ROE, who at this time was barely twenty years old, was working his way through college, had no criminal record, and both had and expressed to MOLINA his great interest in joining the military and ultimately going into law enforcement.

39. Mr. ROE acted as a police Human Source for MOLINA over a 3 month period, with approximately 20 meetings wherein Mr. ROE provided information by phone or in person that resulted in a critical arrest of gang member. MOLINA provided cash payment at times to Mr. ROE.

40. In February 2006, MARIO MOLINA called Mr. ROE and informed him that the FBI was interested in having ROE work directly for them. MOLINA encouraged and induced ROE to work with the FBI, stating he and his family would be protected, he would be paid more, and that he could work to infiltrate the gang.  He agreed.

41. FBI Agent FLORES called Mr. ROE in February 2006 and induced him to provide investigative services. FLORES and assured Mr. ROE that the government would provide protection and security to him and his family and that his identity as an agent would remain confidential. They assured and promised Mr. ROE that by working with them, he would get into the military and be on track to be hired as a law enforcement officer.

42. ROE was placed by these individuals into what they knew to be a murderous, violent and dangerous gang, MS-13, despite FBI and ICE reports dated around this time that clearly indicated the gang already suspected ROE of being a police Human Source. Despite this knowledge and danger, the individual agents induced ROE to continue to provide investigative services with the promise of protection and the promise of a future in law enforcement.

43. Individual members of the FBI, with the United States Attorney's Office for the Northern District of California, namely United States Attorney Kevin Ryan and Assistant United States Attorney Jim Chou, regularly renewed Mr. ROE's status as an activated Human Source authorized to engage in otherwise illegal activities in the pursuit of infiltrating the MS-13. Over the next two years Mr. ROE was used by the aforementioned members of the FBI, ICE, and U.S. Attorneys' Office to infiltrate the gang and to provide valuable information.

44. Mr. ROE identified for the government more than 20 Mara-Salvatrucha gang members in both the 20th Street and Richmond cliques. He further warned of impending murders, expressing that the gang was extremely concerned about MOLINA's continual involvement in the members' arrests. He also described, at length, much of the inner workings of the gang.

45. According to FBI reports, MS-13 gang members suspected ROE was a Human Source and as early as 2005. The defendants knew that MS-13 members had targeted ROE and his family for murder, a threat that continues through the present day, nevertheless these individuals acted in concert to embed Mr. ROE into this dangerous gang, promising him safety and a future in law enforcement.

46. During his work as a paid embedded Human Source, Mr. ROE regularly reported to his handlers, including FLORES and other Defendants. Over the course of his work with OCS, and at the agents' request, Mr. ROE debriefed SFPD, FBI and/or ICE agents on more than 72 occasions. In so doing, he provided intelligence on the inner working of the gang and its members, identified hundreds of gang members, wore body wires to record meetings under extremely dangerous conditions on at least 14 different occasions, and made scores of consensually monitored calls to gang members in efforts to purchase weapons as well as to implicate gang members in the ongoing

criminal activity. In furtherance of his handler's goals, Mr. ROE suffered beatings, arrests and threats of murder from the gang.

47. At all times relevant to this claim, the Defendants were conducting and engaged in an ongoing investigation of the MS-13.   At all times relevant to this claim, these individuals were aware of the dangers posed to Mr. ROE by the work he was authorized to do and was doing for them.

48. The Defendants were aware that:

a)  members of MS-13 violently clash with members of rival gangs over various issues including gang pride, control of drug territory and the right to extort money from others;

b)  San Francisco MS-13 members claim to be Sureño gang members, a term that generally encompasses gang members of Hispanic descent, connected to Southern California, who were born outside of the United States, and who claim blue as their gang color;

c)  The principal rival to MS-l3 in the San Francisco Bay Area is the Norteños gang which is generally composed of individuals from Northern California who were born in the United States and whose members typically identify themselves by wearing red clothing;

d)  Members of MS-13 are required to attack Norteños or perceived Norteños whenever the opportunity arises and failure to do so is considered cowardice that results in loss of standing within the gang;

e)   MS-13 in the San Francisco Bay Area used violence and the threat of violence to tax other criminal actors who operate and profit in areas claimed by MS-13 as its territory;

f)  Gang members are required to engage in acts of violence by the rules of admission to the gang.   Greater respect within the gang is given to members who engage in more numerous and more audacious attacks against rival gang members. It is not only important for an MS-13 member to engage in acts of violence against rivals it is equally important that violence by an MS-13 member be made known to others;

g)  Accordingly, any Human Source successfully infiltrating the gang as a member would necessarily be forced to engage in or at least be perceived as engaging in acts of violence against Nortenos or suffer punishment and possibly death.

49. As of 2004, the Defendants were aware that the groups known as the Nortenos, Surenos and MS-13 were at war on the streets of the San Francisco Bay Area and that the violence was increasing creating an increased risk to Human Sources like Mr. ROE. The Defendants had knowledge that membership in the gang required acts of violence.  They knew that the rules of the gang determine that the only way out of the gang was by death. They knew that any gang member found to have been providing information about the gang to law enforcement was punished by death.  The punishment extended not only to the Source, but to the Source's family as well.

50. Due to the Defendants' mishandling of him, Mr. ROE was under constant threat of being murdered, with his murder being ordered by gang members on numerous occasions.  Mr. ROE and his family remain under serious and deadly threat to this day.

51. Nonetheless, Mr. ROE continued to work for the Defendants.

52. During his work for the Defendants, Mr. ROE was responsible for numerous arrests and successful prosecutions.  His intelligence prevented countless acts of violence, shootings and quite possibly murders.  The information provided by Mr. ROE was directly responsible for the seizure of a number of guns from the streets of San Francisco.  He was responsible for the infiltration by informant SA-1218.  His information led to the arrest of at least one murder suspect and the seizure of the murder weapon.

53. In an FBI report dated June 20, 2007, FLORES described Mr. ROE as "an established source with excellent access, who has reported reliably for over one year." Shortly thereafter, FLORES stopped by Mr. ROE's place of employment and gave him a new cell phone.  Over time, their relationship had devolved from the almost daily debriefings of the early months down to monthly contact.

54. FLORES, Mr. ROE's FBI handler since February 2006, was transferred to IRAQ on or around October 2007, at which point a new handler was assigned.  After minimal effort was made by this new handled to contact ROE, efforts including only two phone calls and one visit to a work site where Mr. ROE did not work (despite his previous handler having met with him at the correct location). Despite his long history of reliable service, his new handler decided in this short time period to abandon Mr. ROE inside the dangerous, murderous gang that suspected him of

infiltration.  Unfortunately Mr. ROE was not told that he was being abandoned, and did not have the means to extricate himself from inside the gang, as he was embedded at the behest of his handlers.  Mr. ROE was not informed that he was being abandoned, so continued to work gathering intelligence toward the goals of the OCS investigation.  He also continued to believe that he and his family would be protected.

55. On July 11, 2008, SFPD officers executed a search warrant of Mr. ROE's residence.  Shortly thereafter, Mr. ROE went to SFPD at 850 Bryant Street and embarked on a multi-day debriefing providing an enormous amount of information he had amassed in the ensuing months.  The debriefing was conducted by SFPD Homicide Inspectors NOOLAN and CAGNEY, and ICE agents GINN and MERENDINO; it concerned San Francisco Mission District killings.  Mr. ROE explained to the officers and agents that he was applying for a job in law enforcement.

56. Even after his arrest on October 22, 2008, believing he was still working undercover for the FBI in some capacity, and that his arrest was just a cover, Mr. ROE provided ICE agents the intelligence and information he had collected over the ensuing months; as well he provided this information to Assistant United States Attorneys Laura Gwinn and Wilson Leung.

57. The discovery though incomplete through the present date, that has been provided to Mr. ROE in *U.S. vs. [X][2]*, et al (the case under which Mr. ROE is currently awaiting federal criminal trial), makes clear that members of the MS-13 suspected Mr. ROE of being an informant. Starting as early as late 2005, as a result of his suspected Human Source status, he had been "green-lighted" to be murdered by various members.  He was in extreme danger the entire time he worked with the FBI, which required him to take extraordinary measures to stay alive as well as continue to infiltrate the organization.

58. Inexplicably, the Defendants and the government did not take any steps to protect Mr. ROE or his family as promised.  Instead, they took the seemingly irrational and unintelligible step of prosecuting him for the very same acts he was asked to, and authorized to perform on their behalf.

//

---

[2] The Plaintiff is able and willing to provide the true case name under protective seal, if requested.

### JOHN ROE's Indictment and Arrest

59. Plaintiff is informed, believes, and based thereon alleges that FBI agent FLORES and ICE agent Brian GINN, as well as DEFENDANT DOES 10-20, who are presently unknown to the Plaintiff, banged on his door and unlawfully arrested ROE in the very early morning hours of October 22, 2008.

60. During the arrest, and without further explanation, ICE agent GINN stated to Mr. ROE "you knew we were coming", continuing to foster ROE's belief that the arrest was a part of his cover, and was critical to ensuring that his identity as a Human Source would be protected, and that he and his family would be protected throughout the remainder of the investigation.

61. FBI agent FLORES and Immigration and Customs Enforcement (ICE) Special Agent Chris MERENDINO, MOLINA, DEFENDANT DOES 11-20, may include both state and federal employees acting under the direction of the federally funded investigation, who are presently unknown to the Plaintiff, interviewed him without an attorney present, on October 22, 2008. ROE was promised protection for both he and his family, in exchange for his continued cooperation and information that he provided, which was key to the investigation up to this point and continuing.

62. The Indictment filed October 16, 2008 alleged the following charges against JOHN ROE: Count One: Racketeering Conspiracy (18 U.S.C. § 1962(d)); Count Two: Conspiracy to commit Murder in Aid of Racketeering (18 U.S.C. § 1959(a)(5)); Count Three: Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering (18 U.S.C. § 1959(a)(6)); Count Four: Use Possession of Firearm in Furtherance of Crime of Violence (18 U.S.C. § 924© & 2)

63. Overt Acts:

a) (16) On or about April 8, 2006, in San Francisco, California, (X) and others known and unknown, fought with members of a rival gang.

b) (58) On or about July 11, 2008, in Oakland, California, JOHN ROE picked up (X) and others known and unknown and drove them to San Francisco.

64. Various Superseding Indictments have been filed in this case.

a) **The Third Superseding Indictment** filed 09/24/2009, the indictment upon which JOHN ROE presently stands charges, dropped act 58 and added four other acts; Count One:

Racketeering Conspiracy (18 U.S.C. § 1962(d)); Count Two: Conspiracy to Commit Murder in Aid of Racketeering (18 U.S.C. § 1959(a)(5)); Count Three: Conspiracy to Commit Assault with a Dangerous Weapon in Aid of Racketeering (18 U.S.C. § 1959(a)(6)); Count Four: Use Possession of Firearm in Furtherance of Crime of Violence (18 U.S.C. § 924© & 2)

65. Mr. ROE's alleged overt acts that gave rise to these charges are set forth in paragraph 27 of the Third Superseding Indictment as follows:

a) (21) On or about September 24, 2005, in San Francisco, California ... JOHN ROE, met with other MS-13 members at Mission Playground and discussed, among other things, the leadership of the 20th Street Clique, attacking rival gang members, taking control over drug distribution occurring in territory claimed by MS-13, and killing of a rival gang member known as (X).

b) (22) On or about September 24, 2005, in San Francisco, California ... JOHN ROE agreed to conduct surveillance on a rival gang member known as (X) whom MS-13 sought to kill.

c) (23) On or about October 21,2005 in San Francisco, California (X) and others known and unknown, gathered in the vicinity of 20th Street and San Carlos Street.

d) (36) On or about April 8, 2006, in San Francisco, California, (X) and others known and unknown, fought with a group of individuals.

e) (45) "On or about July 18, 2006, in San Francisco, California (X) and others known and unknown met and discussed the need to attack rival gang members.

66. Following his arrest, GINN, MERENDINO, AUSA Mr. Leung and AUSA Ms. Gwinn, while continuing to engage in investigation of the case, attempted to continue to use Mr. ROE as a Human Source and extract intelligence and information from him. They continued to promise protection for him and his family.

67. At the time of his arrest his family was promised protection by the FBI, however, to this day remain unprotected, under threat of life. The government released personal information about his family's whereabouts that was otherwise not known, that directly put them in increased danger and forced them to flee their homes and jobs.

68. JOHN ROE remains wrongfully incarcerated following his wrongful arrest on October 22, 2008.

## FIRST CLAIM FOR RELIEF

### *Bivens* Claim
### Violation of the Fourth and/or Fourteenth Amendments to the Constitution:
### Unlawful Seizure and Arrest Without Probable Cause

**(Against Defendants SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER , ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN AND DEFENDANT DOES 1-10 and 21-30, in their individual and official capacities)**

69. Plaintiff ROE re-alleges and incorporates by reference paragraphs 1 through 68 of this complaint as though fully set forth therein.

70. On October 22, 2008, the Defendants named above within this cause of action deprived Plaintiff ROE of his clearly established right to be free from unlawful seizure in violation of the Fourth and/or Fourteenth Amendments to the United States Constitution, when they surprised him and banged on his door in the early hours of the morning, seized and arrested him without an arrest warrant, and have continued to unlawfully detain him without reasonable suspicion or probable cause.  Specifically, he was seized and remains incarcerated based on the information and activities the Defendants authorized and directed him to do, while he was working as a paid embedded Human Source in direct furtherance of the MS-13 investigation.

71. In the conduct described above, Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard and deliberate indifference for Plaintiff ROE's clearly established Fourth and Fourteenth Amendment rights by inducing, authorizing and funding him to perform otherwise illegal acts, and then implicating him and not providing him protection despite the fact that his investigative services directly put him in harm's way.

72. Upon information and belief, Defendant DOES include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

73. As a result of the conduct of these Defendants named above within this cause of action, Plaintiff ROE suffered and continues to suffer from psychological harm, mental distress, humiliation, embarrassment, fear, loss of freedom, loss of family, and unlawful detention.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## SECOND CLAIM FOR RELIEF

### *Bivens* Claim
### Violation of the Fifth and/or Fourteenth Amendments to the Constitution: Denial of Liberty and Due Process
### (Against Defendants SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER , ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN, AND DEFENDANT DOES 1-40 in their individual and official capacities)

74. Plaintiff ROE re-alleges and incorporates by reference paragraphs 1 through 73 of this complaint as though fully set forth therein.

75. At all times herein mentioned, Defendants had an obligation to comply with the due process requirements set forth in the Fifth and Fourteenth Amendment to the United States Constitution.

76. In the conduct described above, Defendants acted willfully, wantonly, maliciously, oppressively, and with conscious disregard and deliberate indifference for Plaintiff ROE's rights, causing him to be wrongfully incarcerated and deprived of his liberties and freedoms, from October 22, 2008 through the present.  Defendants' bad acts interfered with Plaintiff ROE's clearly established Fifth and Fourteenth Amendment liberty interest in freedom, and his right to familial companionship, society, and support.

77. Upon information and belief, Defendants include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

78. As a result, Plaintiff ROE suffered and continues to suffer loss of liberty and freedom, and loss of familial relationship.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF

*Bivens* Claim
**Violation of the First, Fourth and/or Fourteenth Amendments to the Constitution:
Right to be Free from Harassment and Intimidation Designed to Restrain Speech
(Against Defendants SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO,
BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER ,
ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J.
KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING,
GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER,
FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN,
GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU,
JOHN CAGNEY AND TOM NOOLAN, AND DEFENDANT DOES 1-40 in their
individual and official capacities)**

79. Plaintiff ROE re-alleges and incorporates by reference paragraphs 1 through 78 of this complaint as though fully set forth therein.

80. At all times herein mentioned, Defendants had an obligation to comply with the requirements set forth in the First, Fourth and/or Fourteenth Amendments to the United States Constitution.

81. Plaintiff is informed and believes that Defendants acted together to violate his First Amendment rights by the following acts and omissions:

   a) Subjecting him to unlawful arrest, extended incarceration and investigation, to ensure fear, intimidation, loss of freedom and silence;

b) Exposing his identity as a confidential Human Source during the investigation to instill fear intimidation and silence;

c) Exposing his families personal information during the investigation to instill fear intimidation and silence;

82. The Defendants' acts and omissions were deliberate and were a concerted effort to silence and intimidate him, in order to ensure he would not expose the malfeasance and bad faith actions of the Defendants, which would in turn damage the credibility of their investigation, and/or expose them to liability.

83. Defendants deprived Plaintiff of his clearly established right to be free from retaliatory investigation, arrest, incarceration, and threat of harm (as well as threats to his family), in violation of the First and Fourteenth Amendments to the United States Constitution.

84. By reason of the acts specified herein, these Defendants have violated the constitutional rights of Plaintiff ROE, including those provided in the First, Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments to the U.S. Constitution.

85. Upon information and belief, Defendants include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

86. As a result of the conduct of these Defendants, Plaintiff ROE has suffered and will continue to suffer damages for the ongoing deprivation of his constitutional rights, including those damages plead herein.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

//

//

//

//

//

# FOURTH CLAIM FOR RELIEF

## *Bivens* Claim
### Violation of the Sixth and Fifth Amendments to the Constitution
### Interference with Right to Counsel and Right Against Self-Incrimination
### (Against Defendants SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER , ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN, AND DEFENDANT DOES 1-40 in their individual and official capacities)

87. Plaintiff ROE realleges and incorporates by reference paragraphs 1 through 86 of this complaint as though fully set forth therein.

88. Beginning September 2005 and continuing through approximately October 2008, the Defendants intentionally interfered with ROE's right to counsel.

89. On September 30, 2005, MOLINA, FLORES, MERENDINO and DEFENDANT DOES 11-20 conducted an extended, approximately 2 hours in length, in-custody interrogation and debriefing of Mr. ROE at the Hall of Justice, located at 850 Bryant in San Francisco. Mr. ROE was not advised of nor did he understand his Sixth right to counsel, or his Fifth right against self-incrimination. Instead, he was tricked and induced to provide at length information in exchange for protection for him and his family, and future assistance becoming law enforcement.

90. Flowing directly from these conversations, Mr. ROE conducted investigations at the request of and for the OCS as described above, including wearing a wire and engaging in consensually monitored calls. Because he is now charged with acts and conversations engaged in while wearing a wire, Mr. ROE was duped into waiving his right to counsel and his right against self-incrimination from the moment the in-custody interrogation began in September 2005, throughout the entire OCS investigation leading up to his October 22, 2008 arrest. He was entrapped, induced into performing and engaging in these activities, and understandably believed he was part of the OCS investigation. This was not a knowing and intelligent waiver.

91. On October 22, 2008, following his arrest, FLORES, GINN, United States Attorney Leung, and DEFENDANT DOES 21-30 conducted an extended, days long, in custody interrogation and debriefing of Mr. ROE. Mr. Leung, while continuing to investigate and gather intelligence, misled ROE to believe he was still working cooperatively, improperly inducing information in exchange for promised protection for him and his family, and promised future assistance becoming law enforcement.

92. Mr. ROE did not and could not provide a knowing and voluntary waiver of his right to counsel or his right against self-incrimination under these conditions of trickery and deliberate deceit. He believed he was providing information, as he was authorized and requested to gather by law enforcement, as a fellow law enforcement agent.

93. The Defendants together with others known and unknown, each being a person employed by and/or associated with the FBI, ICE, OCS, SFGT, unlawfully, knowingly, and intentionally did conspire to deprive Plaintiffs of the rights and privileges guaranteed to them under the Fifth and Sixth Amendments to the United States Constitution in an effort to secure incriminating information and investigate the MS-13 gang for future prosecution.

94. Upon information and belief, Defendants include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

95. As detailed above, the acts and omissions caused harm to Plaintiff ROE, including the deprivation of his rights and privileges under the Constitution of the United States.

96. As a direct and proximate result of the deliberate and deceitful actions of the Defendants, Plaintiff ROE suffered the injuries described herein.

97. As a result of the conduct of these Defendants, ROE has and continues to suffer the deprivation of his rights and the resulting damages and harms prayed for herein.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

*//*

## FIFTH CLAIM FOR RELIEF

*Bivens* Claim
**Violation of the Fourth, Fifth, Sixth and Ninth and/or Fourteenth Amendments to the
United States Constitution:
Failure to Train and Supervise
(Against Supervising Defendants DANIEL H. BUTLER JOSEPH L. FORD, AND
DEFENDANT DOES 1-10, 16-20, 26-40 in their individual and official capacities.)**

98. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 97 of this complaint as though fully set forth therein.

99. Plaintiff is informed, believes and bases thereon alleges that the individual supervisory agents named above, were acting under color of federal law, and that their acts and omissions constituted a failure to train or to supervise their subordinates to prevent the violation of Mr. ROE's Fourth and/or Fourteenth Amendments right to be free from unreasonable searches and seizures, violated his Fifth and/or Fourteenth Amendment Right to be free from deprivation of liberty without due process of law and his right to familial relationship, further directed and induced him to incriminate himself in violation of the Fifth and/or Fourteenth Amendment, further deprived him of his right to counsel under the Sixth and/or Fourteenth Amendments, and invaded his right to privacy guaranteed by the Ninth and/or Fourteenth Amendments.

100.     The Defendants failed to train or to supervise their subordinates regarding the following: 1) maintaining the obligation of confidentiality with regard to the Source's (and the Source's family) identity;  2) to ensure they did not encourage and authorize specific illegal activity with the promise of immunity in exchange for those services; 3) to ensure they did not promise protection for embedded Human Sources and their families, in exchange for services; 4) to ensure they did not expose materials the Human Source had provided; and 5) to ensure they did not conspire with other federal agencies and agents, including officers of the SFPD, to obstruct justice and abuse the court process and violate that Source's constitutional rights.

101.     The Supervisory Defendants here also failed to supervise and to train their subordinates to ensure they did not use their authority to improperly promise inducements in exchange for self-incriminating information, without advising the Source of his rights to counsel and against incrimination

102.     Upon information and belief, Defendants include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

103.     The named Defendants are liable to Mr. ROE for damages for his deprivation of rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## SIXTH CLAIM FOR RELIEF

*Bivens* Claim
### Conspiracy to Violate the First Fourth, Fifth and Fourteenth Amendments to the Constitution
**(Against SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER , ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN, AND DEFENDANT DOES 1-40 All Defendants are sued in their individual capacities)**

104.     Plaintiff ROE re-alleges and incorporates by reference paragraphs 1 through 103 of this complaint as though fully set forth therein.

105.     Plaintiff is informed and believes that beginning at least on September 30, 2005 and continuing through the present, the Defendants together with others known and unknown, each being a person acting under the direction of the OCS and "Devils Horns" investigations, and each being employed by and/or associated with the FBI, ICE, STI, SFGT and SFPD, and all, unlawfully, knowingly, and intentionally did conspire to deprive Plaintiff of the rights and privileges guaranteed to him under the First, Fourth, Fifth, Sixth, Ninth and Fourteenth amendments to the United States Constitution in an effort to legitimize and bolster the investigations, and silence the Plaintiff.

106.     It was further part of the manner and means of the conspiracy that the Defendants agreed to and did engage in unlawful searches, arrests and extended seizures;

107.     It was further part of the manner and means of the conspiracy that the Defendants agreed to engage in and did engage in the inducement of Mr. ROE with the promise of a future in law enforcement and to protect him and his family, in exchange for his participation in otherwise illegal activities and reports from him detailing such otherwise illegal activities in the furtherance of the OCS investigation, duping him into waiving his right to counsel and against self-incrimination, and then to later use evidence ROE gathered for their investigation to investigate and incriminate him.

108.     It was further part of the manner and means of the conspiracy that the Defendants agreed to and did engage in a pattern and practice of inducing incriminating statements.

109.     Upon information and belief, Defendants include members of local and state law enforcement agencies that were acting as part of the federally funded and controlled OCS to deprive Plaintiff ROE of his constitutional rights, therefore the state and local law enforcement individuals are cloaked under color of federal law.

110.     156.     As detailed above, the conspiracy caused harm to Plaintiff ROE, including the deprivation of their rights and privileges under the Constitution of the United States and the laws of California.

111.     As a result of the conduct of these Defendants, herein sues in their individual capacities, Plaintiff ROE has suffered the deprivation of their constitutional rights, including those damages plead hererin.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983
### Violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment to the Constitution:
### (Against Defendants CITY, MOLINA, LAU, CAGNEY AND NOOLAN, and DEFENDANT DOES 11-15, 21-25 and 31-40)

112.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 111 of this complaint as though fully set forth therein.

113.     In doing the acts described herein, the Defendants Mario MOLINA, Scott Lau, John Cagney and Tom Noolan SFPD, CITY, and DEFENDANT DOES 11-15 and 21-25 acted under

color of law to deprive Plaintiff ROE of his right to be free from unreasonable searches and seizures, further violated his right to be free from deprivation of liberty without due process of law and his constitutional right to familial relationship, directed and induced him to incriminate himself, deprived him of his right to counsel and invaded his right to privacy.

114.      As a result of the act and omissions of Defendant Mario MOLINA, Scott Lau, John Cagney and Tom Noolan SFPD, CITY, and DEFENDANT DOES 11-15, 21-25 and 31-40, ROE suffered violation of his constitutional rights and remains deprived of his liberty and family through this day.  He has and continues to suffer resulting emotional and physical harm, as detailed herein.

115.      The Defendants are sued in their individual and official capacities.

116.      The named Defendants are liable to Mr. ROE for damages and deprivation of his rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## EIGHTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983
### Violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment to the Constitution:
### Failure to Train and Supervise
### (Against Defendants CITY, FONG, GASCON, and DEFENDANT DOES 11-15 and 21-25, 31-40)
### *Monell* Claim

117.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 116 of this complaint as though fully set forth therein.

118.      In doing the acts described herein, the Defendants SFPD, CITY, FONG, GASCON and DEFENDANT DOES 11-15, 21-25, and 31-40 acted under color of law to deprive Plaintiff ROE of his right to be free from unreasonable searches and seizures, further violated his right to be free from deprivation of liberty without due process of law and his constitutional right to familial relationship, directed and induced him to incriminate himself, deprived him of his right to counsel and invaded his right to privacy.

119.      As a result of the act and omissions of Defendant SFPD, CITY, FONG, GASCON and DEFENDANT DOES 11-15, 21-25, and 31-40, ROE suffered violation of his constitutional

rights and remains deprived of his liberty and family through this day.  He has and continues to suffer resulting emotional and physical harm, as detailed herein.

120.    The Defendants are sued in their official capacities.

121.    The named Defendants are liable to Mr. ROE for damages for his physical injuries, mental and emotional injury and suffering, and deprivation of his rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

### ELEVENTH CLAIM FOR RELIEF

#### 42 U.S.C. § 1983
**Violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment to the Constitution:
Policies Customs and Practices
(Against Defendants CITY, FONG, GASCON, and DEFENDANT DOES 11-15 and 21-25, 31-40)**
*Monell* Claim

122.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 121 of this complaint as though fully set forth therein.

123.    Defendant s SFPD, CITY, FONG, GASCON and DEFENDANT DOES 11-15, 21-25, and 31-40 failed to enact and maintain appropriate and effective policies and customs related to the proper handling of Human Sources, Human Sources (including confidential, and/or paid, and/or Human Sources) specifically detailed to include handling Human Sources within the context of joint investigations with federal agencies, assuring that improper inducements or promises are not made in exchange for services, to ensure confidential information is not exposed, and specifically in order to prevent the constitutional violations of Mr. ROE detailed herein.

124.    As a result of the act and omissions of Defendant SFPD, CITY, FONG, GASCON and DEFENDANT DOES 11-15, 21-25, and 31-40, ROE suffered violation of his constitutional rights and remains deprived of his liberty and family through this day.  He has and continues to suffer resulting emotional and physical harm, as detailed herein.

125.    The Defendants are sued in their official capacities.

126.     The named Defendants are liable to Mr. ROE for damages for his physical injuries, mental and emotional injury and suffering, and deprivation of his rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## TWELFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1985 (c)

**Conspiracy to Interfere With and Deprive Civil Rights
Through the Fourth, Fifth, Sixth and Ninth Amendments to the United States
Constitution
Against Defendants MOLINA, LAU, CAGNEY AND NOOLAN, and DEFENDANT
DOES 11-15, 21-25 and 31-40)**

127.     Plaintiff is informed, believes and bases thereon alleges that Plaintiff re-alleges and incorporates by reference paragraphs 1 through 126 of this complaint as though fully set forth therein.

128.     The Defendants acted herein as described above, for the purpose of depriving, either directly or indirectly, Mr. ROE of the equal protection of the laws and of equal privileges and immunities under the laws.

129.     The Defendants are sued in their official capacity and individually.

130.     The named Defendants are liable to Mr. ROE for damages for his physical injuries, mental and emotional injury and suffering, and deprivation of his rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## THIRTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1985 (b)
### Obstruction of Justice
**Violation of the Fourth, Fifth, Sixth, and Fourteenth Amendment to the Constitution:
(Against MOLINA, LAU, CAGNEY, NOOLAN and DEFENDANT DOES 11-15, 21-25 and
31-40)**

131.     Plaintiff is informed, believes and bases thereon alleges that Plaintiff re-alleges and incorporates by reference paragraphs 1 through 130 of this complaint as though fully set forth therein.

132.     The Defendants conspired, through the acts and omissions described herein, for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice and with intent to deny Mr. ROE the equal protection of the laws.

133.     The Defendants are sued in their official capacity and individually.

134.     The named Defendants are liable to Mr. ROE for damages for his harms and deprivation of his rights and liberties as prayed for below.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## FOURTEENTH CLAIM FOR RELIEF
### Civil RICO and RICO Conspiracy Pursuant to 18 U.S.C. § 1962(c), (d)

**(Against Defendants HEATHER FONG, GEORGE GASCON, SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, SANDRA C. JACQUEZ FLORES, CHRISTOPHER MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH L. FORD, DANIEL H. BUTLER,  ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN ELIZABETH A. WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA, MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S. PARNELL, TSENG CHOW, AMY POLING, GEORGE DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST, MARK HAMMELL, SANG JUN, GREGORY A. JENKINS , CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU, JOHN CAGNEY AND TOM NOOLAN and DEFENDANT DOES 1-40, in their individual and official capacities)**

135.     Plaintiff is informed, believes and bases thereon alleges that Plaintiff re-alleges and incorporates by reference paragraphs 134 through of this complaint as though fully set forth therein.

136.     At all times relevant herein, Defendants were "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  In violation of § 1962(c) and (d), Defendants conducted or participated and/or conspired to conduct or participate, directly or indirectly, in the conduct of certain enterprises affairs through a pattern of racketeering activity, thereby proximately causing injury to Plaintiff ROE's business or property. Each of these Defendants knew the essential nature and scope of the enterprise that he was employed by or associated with, and each of the Defendants intended to participate in the affairs of the particular enterprise.

137.    "Operation Community Shield" and investigation "Devils Horns" is and has been a RICO enterprise as that term is defined in § 1961(4) of RICO. At all times relevant hereto, the activities of the above described enterprise affected interstate or foreign commerce by infiltrating, funding and authorizing Human Sources to participate in, direct, organize and carry out dealings within the investigation of international gang MS-13, reaching international members, including El Salvador.

138.    Defendants were employed by various federal and state agencies all coordinated through the joint investigation task force called OCS, conducting an investigation known as "Devils Horns", and therefore all Defendants are associated with the enterprise as detailed above. In violation of § 1962(c) of RICO, Defendants conducted and/or conspired to conduct the affairs of the OCS enterprise through a "pattern of racketeering activity," as that term is defined in § 1961(1) and (5) of RICO. Defendants committed, aided and abetted and/or conspired to commit or threaten to commit violations 18 U.S.C. § 1512 (obstruction of justice), as alleged below.

139.    In the alternative, there existed an associated-in-fact enterprise, OCS, which consisted of the FBI, ICE, ICE-STI, ICE-OCS, SFPD, and the SFGT. Each defendant named in this count is a member of the associated-in-fact-enterprise, voluntarily agreed to join the enterprise and played an active role in its affairs. Each of the members of the associated-in-fact enterprise are persons or legally incorporated entities that conducted (and conduct) business activities through the United States and overseas. The activities of the associated-in-fact enterprise affected interstate and/or foreign commerce. The members of the enterprise, including each defendant named in this count, continue their professional and business activities to date. Each of them was motivated by the desire to induce California residents to engage in illegal activities, for the purpose of investigating those very activities, including Plaintiff ROE, in violation of his constitutional rights. Each member of the associated-in-fact enterprise conducted and/or conspired to conduct the affairs of the associated-in-fact enterprise through a "pattern of racketeering activity," as that term is defined in § 1961(1) and (5) of RICO.

140.    In addition, the pattern of racketeering committed and/or aided and abetted by Defendants involves multiple separate instances of violations of 18 U.S.C. § 1512(b), (c) in

furtherance of the unlawful scheme, involving California residents, including Plaintiff ROE, in violation of his constitutional rights.

141.     The instances of Defendants' violations of 18 U.S.C. § 1512(b), (c) in furtherance of the enterprises' unlawful scheme include:

a.  Defendants repeatedly authorized, funded and directed the illegal sale of guns through OCS;

b.  Defendants repeatedly authorized, funded and directed the illegal sale of controlled substances through OCS;

c.  Defendants repeatedly authorized, funded and directed multiple acts of violence during their investigation.

142.     Defendants' acts or threats to violate 18 U.S.C. § 1512 constituted a "pattern of racketeering activity," as that term is defined in § 1961(1) and (5) of RICO, because the acts were related to each other and had continuity.  As alleged herein, Defendants' violations of these federal statutes had the same or similar purposes, results, participants, victims, or methods of commission; they were interrelated and not isolated events.  Defendants' violations of these federal statutes evidenced continuity because they amounted to a period of repeated conduct or conduct that extended temporally from the past into the future with a threat of repetition.

143.     Plaintiff ROE has standing to sue under RICO because they have been injured in his person, business or property by reason of Defendants' violations of § 1962(c) and (d), as set forth in paragraphs 83 through 85, and 94 herein.  Pursuant to § 1964(c) of RICO, Plaintiff ROE is entitled to recover threefold the damages sustained, as well as punitive damages and the costs of bringing suit, including reasonable attorney's fees.

WHEREFORE, Plaintiff ROE prays for relief as set forth below.

## PRAYER FOR RELIEF

**Plaintiff prays for relief as follows:**

1.  For general damages in an amount according to proof;

2.  For special damages in an amount according to proof;

3.  For compensatory damages in an amount according to proof;

4.  For punitive damages against individual defendants only, in amounts according to proof;

5.  For lost wages, employment opportunities, and other losses in an amount according to proof;

6.  For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 1964, and as otherwise authorized by statute or law;

7.  For costs of suit;

8.  For restitution as the court deems just and proper;

9.  For declaratory and injunctive relief as the court deems just and proper; and

10. For such other and further relief as the court deems just and proper.

Dated: October 21, 2010

LAW OFFICES OF GERI LYNN GREEN, LC
Geri Lynn Green
Attorney for Plaintiff
JOHN ROE

1

## JURY DEMAND

2

3

Plaintiff hereby demands a jury trial in this action.

4

5

6

7

8   Dated:  October 21, 2010

9                                              LAW OFFICES OF GERI LYNN GREEN, LC
10                                             Geri Lynn Green
                                               Attorney for Plaintiff
11                                             JOHN ROE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28