United States District Court
For the Northern District of California

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10  MANUEL FRANCO,                                    No. C 10-04768 WHA
11              Plaintiff,
12    v.                                              **ORDER GRANTING
                                                      MOTIONS TO DISMISS**
13  CITY AND COUNTY OF SAN FRANCISCO, San Francisco
    Chiefs of Police HEATHER FONG and GEORGE GASCON,
14  SANDRA C. JACQUEZ FLORES, CHRISTOPHER
    MERINDINO, BRIAN GINN, MARIO MOLINA, JOSEPH
15  L. FORD, DANIEL H. BUTLER, ELIZABETH A.
    WICKMAN, KENNETH KARCH, EMJOHN V. PASCUA,
16  MICHAEL J. KLINKE, JOHN S. POSUSNEY, DAVID S.
    PARNELL, TSENG CHOW, AMY POLING, GEORGE
17  DOBBERSTEIN, CHRISTINE LASCALZO, KRISTINE
    CARTER, FRANCISCO MARTINEZ, NICOLAS T. FORST,
18  MARK HAMMELL, SANG JUN, GREGORY A. JENKINS,
    CHRISTINE LOSCALZO, BEN HORTON, SCOTT LAU,
19  JOHN CAGNEY, TOM NOOLAN, and DEFENDANT
    DOES 1–40,
20
                Defendants.
21  _____/
22
23                          **INTRODUCTION**
24          In this civil action to recover damages arising from the indictment, arrest, and criminal

25  prosecution of plaintiff, defendants move via separate motions to dismiss the complaint in its

26  entirety pursuant to *Heck v. Humphrey*, and various other grounds.  For the reasons stated below,

27  the motions to dismiss are **GRANTED**.

28

**STATEMENT**

This is a civil action to recover damages arising from the indictment, arrest, and conviction of plaintiff Manuel Franco for acts he committed as a member of the Mara-Salvatrucha ("MS-13") gang.  Plaintiff brings claims under Sections 1983, 1985, *Bivens*, and the Racketeer Influenced and Corrupt Organizations Act.  Notwithstanding his conviction by a jury for committing assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. 1959(a)(6), plaintiff alleges in this civil action that the criminal proceedings against him and his conviction were unlawful.  Plaintiff's theory is that defendants, local, state, and federal law enforcement officials, authorized the gang activities underlying his criminal conviction while he worked with them as a human source.  Thus, the theory goes, by arresting and prosecuting plaintiff in the criminal action, defendants violated a panoply of plaintiff's constitutional rights.

Defendants are numerous and have self-identified as "city" and "federal" defendants. The so-called city defendants are:  City and County of San Francisco, Heather Fong, George Gascon, Mario Molina, Scott Lau, John Cagney, and Tom Noolan.  The so-called federal defendants are:  Daniel H. Butler, Tseng Chow, George Dobberstein, Joseph L. Ford, Nicolas T. Forst, Mark Hammell, Sandra Jacquez Flores, Gregory A. Jenkins, Kenneth Karch, Michael J. Klinke, Christine Loscalzo, Francisco Martinez, David S. Parnell, Emmanuel V. Pascua, Amy Poling, Kristine Poole, John S. Posusney, Elizabeth A. Wickman, Brian Ginn, Ben Horton, and Christopher J. Merindino.  They city defendants and federal defendants have each filed separate motions to dismiss.  Defendant Sang Jun, alleged to be a special FBI agent, is the only defendant who has not moved to dismiss.

1.	**PLAINTIFF'S ALLEGED WORK AS A HUMAN SOURCE.**

From September 2005 through February 2010, plaintiff worked as a paid embedded human source for local and federal law enforcement agencies (Compl. ¶¶ 1–2).  Plaintiff was recruited on September 30, 2005, by defendant Molina to work as a human source for ICE's San Francisco Operation Community Shield, a coordinated investigative effort into San Francisco gang activity, including MS-13 (*id*. at ¶¶ 24, 35, 37).  That same day, plaintiff took part in a two-hour debriefing during which he was not advised of his right to counsel or his right against self

incrimination (*id*. at ¶ 89).  "Instead, he was tricked and induced to provide at length information in exchange for protection for him and his family, and future assistance [in] becoming law enforcement" (*ibid*.).

Plaintiff served as a human source for defendant Molina for a three month period, "with approximately 20 meetings wherein [plaintiff] provided information by phone or in person that resulted in a critical arrest of gang member [sic].  Molina provided cash payment at times to [plaintiff]" (*id*. at ¶ 39).  In February 2006, defendant Molina informed plaintiff that the FBI was interested in working directly with him as an informant (*id*. at ¶ 40).  Defendant Molina "induced [plaintiff] to work with the FBI, stating he and his family would be protected, he would be paid more, and that he could work to infiltrate the gang.  [Plaintiff] agreed" (*ibid*.).  "Individual members of the FBI, with the United States Attorney's Office for the Northern District of California . . . regularly renewed [plaintiff's] status as an activated human source authorized to engage in otherwise illegal activities in the pursuit of infiltrating the MS-13" (*id*. at ¶ 43).  Defendants "knew that MS-13 members had targeted [plaintiff] and his family for murder, a threat that continues through the present day, nevertheless these individuals acted in concert to embed [plaintiff] into this dangerous gang, promising him safety and a future in law enforcement" (*id*. at ¶ 45).

In October 2007, plaintiff's handler at the FBI abandoned him as a human source (*id*. at ¶ 54).  He did not inform plaintiff of this decision (*ibid*.).  Plaintiff continued to work gathering intelligence on MS-13 under the belief that he was still acting as a human source (*ibid*.).

**2.    PLAINTIFF'S ARREST AND INDICTMENT.**

On July 11, 2008, "SFPD officers executed a search warrant of [plaintiff's] residence. Shortly, thereafter, [plaintiff] went to SFPD at 850 Bryant and embarked on a multi-day debriefing providing an enormous amount of information he had amassed in the ensuing months. The debriefing was conduced by SFPD Homicide Inspectors Noolan and Cagney [both defendants], and ICE agents Ginn and Merendino [also defendants]; it concerned San Francisco Mission District killings" (*id*. at ¶ 55).

On October 16, 2008, plaintiff was indicted on four counts and arrested on October 22,

United States District Court

For the Northern District of California

2008 (*id.* at ¶¶ 4, 59, 62).  Plaintiff believed that the arrest was part of his cover so his identity as

a human source would be protected (*id.* at ¶ 60).  "Plaintiff is informed, believes, and based

thereon alleges that FBI agents Flores and ICE Agent Brian Ginn [defendant], as well as

defendant Does 10–20, who are presently unknown to the plaintiff, banged on his door and

unlawfully arrested [plaintiff] in the very early morning hours of October 22, 2008" (*id.* at ¶ 59).

That same day, defendants Molina, Merindino, Flores and defendant Does 11–20 interviewed

plaintiff without an attorney present (*id.* at ¶ 61).  Law enforcement promised to protect plaintiff

and his family in exchange for continued cooperation (*id.* at ¶ 60).  Plaintiff was incarcerated

after his arrest (*id.* at ¶ 68).

On September 24, 2009, a third superseding indictment was filed charging plaintiff with

four counts:  Count One:  racketeering conspiracy in violation of 18 U.S.C. 1962(d); Count Two:

conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. 1959(a)(5); Count

Three:  conspiracy to commit assault with a dangerous weapon in aid of racketeering in violation

of 18 U.S.C. 1959(a)(6); and Count Four: use/possession of a firearm in furtherance of a crime of

violence in violation of 18 U.S.C. 1924(c) and (2) (RJN Exh. B at 29).  Plaintiff's criminal trial

commenced in January 2012.

### 3.   PLAINTIFF'S CRIMINAL TRIAL AND CONVICTION.

During the criminal trial, plaintiff requested that the jury be instructed on the defense of

entrapment, duress, and justification pursuant to the Ninth Circuit Model Criminal Jury

Instructions 6.2 (entrapment), 6.5 (duress) and 6.7 (justification).  The request was denied.  The

order of denial explained that "[n]o evidence of inducement was presented at trial" and that

"[t]here was no indication that the government agents took any action to induce him to conspire

to further the goals of MS-13" (RJN Exh. D at 7–8).

At the close of the evidence, the jury was instructed on the law governing the case.

Specifically, the jury was instructed that in order to convict plaintiff on Count Three, they must

find that plaintiff "knowingly and intentionally conspired to commit assault with a dangerous

weapon" with the intent "to gain entrance to, or to maintain or increase his position in" the

alleged enterprise (RJN Exh. E at ¶ 30).  The jury was also instructed on the allegation which

forms the basis of plaintiff's claims in this action (RJN Exh. E at ¶ 32):

> Defendant Franco contends that he was authorized by government law enforcement officers to commit the acts charged in Counts One, Two, Three and Four.  If a person engages in conduct that violates a criminal statute at the request of a government law enforcement officer, with a sincere and reasonable belief that he is acting as an authorized government agent to assist in law enforcement activity, then that person may not be convicted of that otherwise illegal act, because the requisite criminal intent is lacking.

> As such, you may not convict [plaintiff] on any count unless the government proves beyond a reasonable doubt that [plaintiff] did *not* have a sincere and reasonable belief that he was acting as an authorized government agent to assist in law enforcement activity when he committed the offense charged in that count.

> Each count must be evaluated separately.  The fact that [plaintiff] was authorized to commit one crime does not necessarily mean he was authorized to commit another crime.  Similarly, if [plaintiff] had a sincere and reasonable belief that he was acting as an authorized agent to assist in law enforcement activity with respect to one crime, it does not necessarily follow that he had a sincere and reasonable belief as to other crimes.

On February 16, 2012, the jury convicted plaintiff of Count Three, which charged him with violating Section 1959(a)(6) of Title 18 of the United States Code.  In relevant part, the statute states that whoever conspires to commit assault with a dangerous weapon for the purpose of gaining, maintaining, or increasing position in an enterprise engaged in racketeering activity shall be punished for attempting or conspiring to commit a crime involving assault with a deadly weapon.

*          *          *

The instant complaint alleges twelve claims for relief.  (The claims are numbered one through eight and eleven through fourteen.  There are no claims numbered nine and ten).  The parties filed a stipulated dismissal as to plaintiff's first, second, third, fourth, and sixth *Bivens* claims for relief against city defendants Molina, Lau, Cagney, and Noolan.  The *Bivens* claims remain only as against the federal defendants.

As against the federal defendants, plaintiff alleges the following *Bivens* claims for relief: (1) violation of the Fourth and/or Fourteenth Amendments:  unlawful seizure and arrest without probable cause; (2) violation of the Fifth and/or Fourteenth Amendments:  denial of liberty and

due process; (3) violation of the First, Fourth and/or Fourteenth Amendments:  right to be free from harassment and intimidation designed to restrain speech; (4) violation of the Sixth and Fifth Amendments:  interference with the right to counsel and right against self-incrimination; (5) conspiracy to violate the First, Fourth, Fifth, and Fourteenth Amendments.  Plaintiff alleges against supervising federal defendants Butler and Ford a *Bivens* claim for (6) violation of the Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments:  failure to train and supervise.

As against the various city defendants, plaintiff alleges the following Section 1983 claims:  (7) violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments; (8) violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments:  failure to train and supervise; and (9) violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments:  policies, customs, and practices.  Also against various city defendants, plaintiff alleges the following Section 1985 claims:  (10) conspiracy to interfere with and deprive civil rights through the Fourth, Fifth, Sixth, and Ninth Amendments, and (11) obstruction of justice through violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments.

As against both federal and city defendants, plaintiff alleges a claim for violation of civil RICO and RICO conspiracy pursuant to 18 U.S.C. 1962(c) and (d).  This order follows full briefing and a hearing.

**ANALYSIS**

Defendants have asserted multiple bases for dismissing this action in its entirety.  Federal defendants claim qualified immunity as to certain claims and argue that the complaint fails to state a claim as to various of the claims alleged.  City defendants likewise argue that various claims fail as they do not state a claim for relief that is plausible on the face of the complaint, and they too, are entitled to qualified immunity for certain claims.  Both defendants contend that if plaintiff were to prevail on any one of the claims alleged in the complaint it would necessarily imply the invalidity of his arrest and conviction.  Thus, both motions seek dismissal of this civil action in its entirety pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994).  This order concludes that all claims alleged in this action are barred by *Heck*, except for the RICO claim.  Thus, as to the claims that are barred, the order need not consider whether defendants are entitled to

1   qualified immunity or whether plaintiff failed to state a claim.

2          To survive a motion to dismiss, a complaint must contain sufficient factual matter,

3   accepted as true, to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556

4   U.S. 662, 677–78 (2009).  A claim is facially plausible when there are sufficient factual

5   allegations to draw a reasonable inference that defendants are liable for the misconduct alleged.

6   While a court "must take all of the factual allegations in the complaint as true," it is "not bound

7   to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 677–78 (quoting

8   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[C]onclusory allegations of law and

9   unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

10  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

11         In his opposition, plaintiff refers to facts extrinsic to the complaint, providing no citation

12  to the complaint, whatsoever, in any part of the opposition brief.  This is a motion to dismiss.

13  Facts outside the pleadings will not be considered.

14         **1.     *Heck v. Humphrey*.**

15         Both city and federal defendants contend that this action must be dismissed pursuant to

16  *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court held that:

17              in order to recover damages for allegedly unconstitutional
               conviction or imprisonment, or for other harm caused by actions
18              whose unlawfulness would render a conviction or sentence invalid,
               a § 1983 plaintiff must prove that the conviction or sentence has
19              been reversed on direct appeal . . . .  Thus, when a state prisoner
               seeks damages in a § 1983 suit, the district court must consider
20              whether a judgment in favor of the plaintiff would necessarily
               imply the invalidity of his conviction or sentence; if it would, the
21              complaint must be dismissed unless the plaintiff can demonstrate
               that the conviction or sentence has already been invalidated.
22
23  512 U.S. at 486–87.  "[T]he rationale of *Heck* applies to *Bivens* actions.  *Martin v. Sias*, 88 F.3d

24  774, 775 (9th Cir. 1996).

25         **A.     Overview of Relationship Between
                  Civil and Criminal Action.**

26         Here, plaintiff's conviction for conspiracy to commit assault with a dangerous weapon in

27  aid of racketeering in violation of 18 U.S.C. 1959(a)(6) has not been overturned or otherwise

28  invalidated.

United States District Court
For the Northern District of California

7

This civil action mirrors plaintiff's defense at trial. During the trial of his criminal case, plaintiff argued, as a defense, that he was authorized by law enforcement officers to engage in the conduct forming the basis for the criminal charges against him. In finding defendant guilty of Count Three for conspiracy to commit assault with a dangerous weapon in aid of racketeering, the jury necessarily rejected this defense. Yet, plaintiff attempts to hold defendants civilly liable for alleged violations of various of his constitutional rights, asserting this same theory, arguing that plaintiff was induced to commit criminal acts under the belief that he was acting as an authorized government agent. The jury's verdict would necessarily be impugned if plaintiff were to prevail on the claims in this civil action, excepting the RICO claim.

Plaintiff, however, disagrees. He argues that his criminal conviction was based on acts he committed before he was a human source. By contrast, he argues that this civil action is based on actions undertaken after he began working with defendants. Thus, he concludes, *Heck* does not bar the instant civil action. But, as this Court has ruled, the evidence was sufficient to convict defendant based on criminal activities that occurred both before and after he became a human source. The order now proceeds to consider the claims against city defendants and then moves on to consider the claims against federal defendants.

### B.       Claims Against City Defendants.

As against the city defendants, plaintiff alleges Section 1983 and 1985 claims and a RICO claim (also alleged against the federal defendants). The Section 1983 and 1985 claims are barred by *Heck*.

### *(1)       Section 1983 Claims.*

Plaintiff brings three Section 1983 claims (claims seven, eight, and eleven) against city defendants. His seventh claim alleges violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. His eighth and eleventh claims are premised on the same underlying constitutional violations and are based on a failure to train and supervise theory and also on the theory that defendants "fail[ed] to enact and maintain appropriate and effective policies and customs related to the proper handling of Human Sources," respectively (Compl. ¶ 123).

Plaintiff alleges his Fourth and Fourteenth Amendment rights were violated by

United States District Court

For the Northern District of California

defendants "inducing [and] authorizing . . . him to perform otherwise illegal acts," that he was "tricked and induced to provide at length [incriminating] information" in violation of his Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel, and that he waived these constitutional rights because of defendants' "trickery and deliberate deceit" (*id*. at ¶¶ 71, 89, 92). He alleges that defendants failed to maintain policies and customs that would have ensured that "improper inducements or promises are not made" to human sources (*id*. at ¶ 123). He alleges that his arrest on October 22, 2008, violated his Fourth Amendment rights to be free from unlawful seizures and searches because he was arrested without a warrant and without reasonable suspicion or probable cause. Furthermore, plaintiff alleges he was "incarcerated based on the information and activities the defendants authorized and directed him to do" (*id*. at ¶ 70). He further alleges he was incarcerated in violation of his Fifth and Fourteenth Amendment due process rights and that he "suffered violation of his constitutional rights and remains deprived of his liberty" as "a result of the act and omissions of defendants (*id*. at ¶¶ 76, 119).

*Heck* bars a civil action to recover damages — like the action here — for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction . . . invalid" if it would "necessarily imply the invalidity of [plaintiff's] conviction." 512 U.S. at 486–87. Our court of appeals has recognized, that *Heck* bars a plaintiff's civil action challenging the search and seizure of evidence upon which the plaintiff's criminal charges and conviction were based. *Szajer v. City of Los Angeles*, 632 F.3d 607, 611 (9th Cir. 2011). So too has *Heck* been found to bar a civil action where the plaintiff alleges his *Miranda* rights were violated in connection with a criminal investigation and prosecution, resulting in conviction. *Trimble v. City of Santa Rosa*, 49 F.3d 583, 584-85 (9th Cir. 1995); *Williams v. City of Sacramento Police Dep't*, 2012 WL 762016, *3 (E.D. Cal. March 6, 2012). *Heck* also bars civil actions alleging a violation of the right to counsel where prevailing on the claim would necessarily imply the invalidity of the plaintiff's conviction. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002).

The bases for the allegations in plaintiff's civil complaint were raised and rejected by the

jury in plaintiff's criminal proceeding. To find now that defendants lacked reasonable suspicion to detain plaintiff, that plaintiff had a sincere and reasonable belief that his criminal acts were committed as an authorized government agent, or that his belief rendered him unable to knowingly and effectively waive his rights to counsel and against self-incrimination would necessarily imply the invalidity of his conviction. So too would prevailing on the claims for failure to train or maintain appropriate and effective policies and customs regarding human sources because they are premised on the aforementioned constitutional violations.

Indeed, in the criminal proceeding, plaintiff moved to instruct the jury on entrapment, necessity, and duress (RJN Exh. C). The motion was denied. The order stated (RJN Exh. D at 7–8):

> No evidence of inducement was presented at trial. Although defendant Franco worked as a government informant for the SFPD and the FBI, there was no evidence that any agent embedded him in MS-13, induced him to conspire to conduct or participate in the conduct of the affairs of MS-13, induced him to conspire to commit murder or assault with a dangerous weapon in furtherance of racketeering, or induced him to possess firearms *in furtherance of the charged conspiracies*.
>
> While defendant Franco was authorized to serve as a "listening post" — he was not charged with mere presence during gang activity. He was charged with actively conspiring and participating in unauthorized criminal activity. There was no indication that the government agents took any action to induce him to conspire to further the goals of MS-13.

Nevertheless, plaintiff argues that *Heck* does not serve as a bar to this civil suit. Relying on *Smith v. Hemet*, plaintiff contends that *Heck* does not bar claims arising from acts post-dating the time period covered by the prior conviction. This argument is belied by the complaint.

Plaintiff's theory is that he was "convicted of activities which preceded his interaction with the defendants" (Opp. 10). Because he was not convicted of Count Four, plaintiff contends, he must necessarily have been convicted of acts which predated the acts complained of in his complaint. But, the latest of the racketeering acts for which plaintiff could have been convicted in his criminal trial occurred July 8, 2009, well after the "interactions with defendants" that form the basis of the allegations in this civil action (RJN Exhs. B, E at ¶ 27).

Moreover, Count Four of the third superseding indictment charged plaintiff with

use/possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. 924(c) and (2). To convict on Count Three, the jury was instructed that "the government must prove . . . at least two racketeering acts" (RJN Exh. E at ¶ 27). As stated in the order denying plaintiff's post-trial motion, "[t]he government also introduced significant evidence that defendant Franco himself specifically intended to agree and did agree to join and participate in the conspiracy" (RJN Reply Exh. G at 4). The order went on to state (*id*. at 5):

> Defendant Franco's argument that no evidence of firearms possession may be considered in determining whether there was sufficient evidence presented at trial to support his conviction also is also rejected. . . . Count Three was a conspiracy charge. Count Four was not. It is not a necessary implication from the jury's verdict that it found no firearms possession ever occurred or was conspired to. For example, the jury may have found that the evidence at trial established beyond a reasonable doubt that the conspiracy defendant Franco agreed to contemplated the possession and/or use of firearms — but the jury may have been unable to unanimously agree beyond a reasonable doubt on a specific instance of *possession or use* of a firearm — which was required to convict on Count Four.

Count Three charged "[b]eginning on a date unknown to the Grand Jury but since at least the mid-1990s, and continuing up through and including the present" that plaintiff, together with others, did conspire and agree to "attack with firearms, knives, and other dangerous weapons actual and suspected *Norteños*, actual and suspected members of other gangs, and individuals suspected of cooperating with law enforcement, in order to maintain and increase their standing within the racketeering enterprise known as MS-13" (RJN Exh. B at ¶ 33). The jury verdict encompassed the entirety of MS-13's racketeering enterprise at issue during the criminal trial. As stated in the order denying plaintiff's motion for a new trial, the "evidence included testimony regarding MS-13's rules and general practices, as well as specific gang-motivated stabbings, shootings, and homicides perpetrated by MS-13 members both *before and after* Franco was an informant" (RJN Ex. G). Thus, plaintiff's attempt to avoid the *Heck* bar fails.

Moreover, in *Smith*, our court of appeals declined to apply the *Heck*-bar to a Section 1983 claim for excessive force in an arrest where the plaintiff had pleaded guilty to resisting arrest. Our court of appeals reasoned that a finding in favor of plaintiff on his Section 1983 claim that defendants unlawfully used excessive force against him *after* he committed the acts

11

which served as the basis for his conviction would not imply that his conviction was invalid.
394 F.3d at 697–700. *Smith* is distinguishable from the facts in our case. *Smith* dealt with a
single, isolated incident. Here, plaintiff alleges a broad, non-specific "pattern of fabrication and
deceit in a deliberate and ongoing violation of plaintiff's constitutional rights" (Compl. ¶ 5).
Plaintiff's Section 1983 claims are barred by *Heck*.

### *(2)   SECTION 1985 CLAIMS.*

The constitutional claims that serve as the basis for both of plaintiff's Section 1985
claims are barred by *Heck*. Thus, plaintiff's twelfth and thirteenth claims brought under Section
1985 against defendants for conspiracy to interfere with and obstruction of civil rights are
likewise barred. *See Guerrero v. Gates*, 442 F.3d 697, 703–04 (9th Cir. 2006) (*Heck* also applies
to conspiracy claims).

### C.   Claims Against Federal Defendants.

Plaintiff brings six *Bivens* claims against the federal defendants. "[T]he rationale of *Heck*
applies to *Bivens* actions." *Martin v. Sias*, 88 F.3d 774, 775 (9th Cir. 1996). *See also Smithart v
Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("There is no question that *Heck* bars . . . claims that
defendants lacked probable cause to arrest [a criminal defendant] and brought unfounded
criminal charges against him. [A criminal defendant] may challenge the validity of his arrest,
prosecution and conviction only by writ of habeas corpus.").

Claim one alleges Fourth and Fourteenth Amendment violations based on the federal
defendants' unlawful seizure and arrest of plaintiff in connection with the indictment in his
criminal action, discussed herein (*id.* at ¶¶ 69–73). Claim two alleges a denial of liberty and due
process based on plaintiff's alleged unlawful arrest and incarceration (*id.* at ¶¶ 74–78). Claim
three alleges that defendants subjected plaintiff to unlawful arrest, extended incarceration, and
deprived him of his rights to be free from retaliatory investigation, arrest, and incarceration (*id.*
at ¶¶ 79–86). Claim four alleges that certain of the federal defendants failed to advise plaintiff of
his right to counsel and right against self-incrimination when he provided them with information.
As with the Section 1983 claim, plaintiff alleges he was "duped" into waiving those rights
(Compl. ¶¶ 89–90). For the reasons previously stated, the success of these claims would imply

12

the invalidity of plaintiff's arrest and conviction.

Plaintiffs' fifth and sixth *Bivens* claims against federal defendants are based on the constitutional violations alleged in the first four claims. Specifically, plaintiff's fifth claim asserts that supervisory agents failed to properly train and supervise the law enforcement officers who allegedly committed the constitutional violations identified in claims one through four and the sixth claim alleges conspiracy to violate those rights. Prevailing on claims five and six would imply the invalidity of plaintiff's arrest and conviction. Thus, all of the claims alleged in plaintiff's civil suit, excepting the RICO claim, which is addressed below, are barred by *Heck.*

Generally, claims will not accrue until a plaintiff's conviction, if ever, is overturned. *Galvin v. Hay*, 374 F.3d 739, 744 n.4 (9th Cir. 2002). In *Wallace v. Kato*, the Supreme Court addressed the question of when a claim for damages arising out of a false arrest accrues. 549 U.S. 384 (2007). The Court held that the "statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to the legal process." *Id.* at 397. In *Wallace*, however, because the petitioner did not file his lawsuit within the limitations period, the Court stated, "we need not decide, had he done so, how much time he would have to refile the suit once the *Heck* bar was removed." *Id*. at 395 n.4.

Plaintiff seeks an "order tolling the statute of limitations and preserving his right to re-file his § 1983 action if and when his conviction is invalidated" (Opp. 14). In a post-hearing submission, plaintiff cites to *Wallace* and requests that this order provide for a "90-day period from the date that the *Heck*-bar is removed" to refile this action (Dkt. No. 76). But the holding in *Wallace* does not address our specific situation. The tolling issue may be addressed if and when plaintiff's criminal conviction is overturned and if and when plaintiff seeks to refile this civil action. The claims barred by *Heck* are **DISMISSED WITHOUT PREJUDICE**.

## 2. RICO CLAIM.

Defendants assert that plaintiff's civil action is barred in its entirety by *Heck*. However, there is no analysis specific to the RICO claim and why prevailing on this claim would necessarily imply the invalidity of plaintiff's criminal conviction. Instead, both defendants focus

13

on the insufficiency of the RICO claim, as pleaded in this civil action. So, too, does this order. Indeed, the claim is so poorly pleaded, it would be difficult to determine if prevailing on the claim would necessarily imply the invalidity of plaintiff's criminal conviction.

Plaintiff alleges a RICO claim under 18 U.S.C. 1962 against the city and federal defendants. The elements of a civil RICO claim are as follows: "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activity (known as predicate acts); (5) causing injury to plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

A plaintiff is required under RICO to allege for each particular defendant the specific "racketeering activity" committed by the defendant. *Bach v. Idaho State Bd. of Med.*, 2012 WL 175417, *5 (D. Idaho Jan. 20, 2012). Plaintiff's allegations are not specific to any defendant. They fail to link any conduct alleged in the RICO claim to any particular defendant. Instead, the allegations are sweeping and attribute the conduct to all "defendants." Furthermore, plaintiff bases his RICO claim, in part, on purported violations of plaintiff's "constitutional rights" (Compl. ¶ 140). But "civil rights violations . . . do not fall within the statutory definition of 'racketeering activity,' and hence are not predicate acts for RICO purposes." *Graf v. Peoples*, 2008 WL 4189657, at *7 (C.D. Cal 2008). What is more, plaintiff does not identify which constitutional violations identified in the complaint are the predicate acts. Plaintiff's RICO claim is deficient. He merely alleges that he has "been injured in his person, business or property by reason of defendants' violations" (Compl. ¶ 143). Plaintiff fails to plead facts demonstrating he suffered a financial loss. "To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. Personal injuries are not compensable under RICO." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

Furthermore, plaintiff alleges that "Operation Community Shield and investigation Devils Horns is and has been a RICO enterprise" and that "defendants were employed by various federal and state agencies all coordinated through the joint investigation task force called OCS, conducting an investigation known as Devils Horn and therefore all defendants are associated

United States District Court
For the Northern District of California

14

United States District Court

For the Northern District of California

1   with the enterprise as detailed above" (Compl. ¶¶ 137–38).  "In the alternative, there existed an

2   associated-in-fact enterprise, OCS, which consisted of the FBI, ICE, ICE-STI, ICE-OCS, SFPD,

3   and the SFGT" (*id*. at ¶ 139).

4          A federal agency does not constitute an enterprise for RICO purposes.  *See Donahue v.*

5   *FBI*, 204 F. Supp. 2d 169, 173–74 (D. Mass. 2002).  And cooperation between federal and local

6   government agencies does not establish a RICO enterprise.  *Kahre v. Damm*, 342 Fed. Appx. 267

7   (9th Cir. 2009) ("[L]egitimate law enforcement activity carried out in the course of the officers'

8   employment" is not "conduct" as contemplated by the RICO statute.).  Indeed, our court of

9   appeals has concluded that a federal employee acting within the scope of his or her employment

10  cannot be engaged in a pattern of racketeering activity.  *Pesnell v. Arsenault*, 543 F.3d 1038,

11  1042 (9th Cir. 2008).  Thus, to the extent plaintiff's RICO claim against the federal defendants is

12  alleged against them in their official capacities, the claim is fatally flawed.

13         As pled, plaintiff fails to state a RICO claim against the city and federal defendants.  The

14  motions to dismiss for failure to state a RICO claim are **GRANTED**.  Plaintiff may seek leave to

15  amend only as to the RICO claim and will have **14-CALENDAR DAYS** from the date of this order

16  to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint.  A

17  proposed amended complaint must be appended to the motion.  The motion should clearly

18  explain how the amendment to the complaint cure the deficiencies identified herein.

19         **3.     REQUEST FOR JUDICIAL NOTICE.**

20         Pursuant to Federal Rule of Evidence 201, city defendants request judicial notice of the

21  following documents:  (1) the complaint; (2) the third superseding indictment; (3) jury

22  instructions 6.2, 6.5, 6.7, (4) the memorandum opinion regarding denial of request for

23  entrapment, duress, and justification instructions; (5) jury instruction number 32; (6) jury verdict

24  form; and (7) order denying Manuel Franco's post trial motion for judgment of acquittal or new

25  trial.  Plaintiff does not oppose.  The request for judicial notice is **GRANTED**.

26

27

28

1

**CONCLUSION**

2          For the above-stated reasons, defendants' motions to dismiss are **GRANTED**.  The *Heck*-

3    barred claims are **DISMISSED WITHOUT PREJUDICE**.  The RICO claim is **DISMISSED**, with leave

4    to file a motion for leave to amend the complaint as to the RICO claim, as stated above.  Counsel

5    is reminded that no time and expenses should be charged to the CJA for this lawsuit.

6

7          **IT IS SO ORDERED.**

8

9    Dated:  June 1, 2012.
                                                    _____
10                                                   WILLIAM ALSUP
                                                    UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California